**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHEA DAVIS nka MARCIANO,<br><br>Plaintiff,<br><br>vs.<br><br>ERIE INSURANCE,<br><br>Defendant. | ) | CASE NO. 4:25-cv-1528<br><br>CHIEF JUDGE SARA LIOI<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Shea Davis nka Marciano ("Davis") was injured in a July 2024 motorcycle accident and made a claim under an automobile insurance policy issued by defendant Erie Insurance ("Erie"). (Doc. No. 1-1 (Complaint); Doc. No. 1-5 (Answer).) After Erie denied coverage, Davis brought suit in state court, and Erie removed the action to federal court. (Doc. No. 1 (Notice of Removal) ¶¶ 1, 9–10.) Now before the Court is Erie's motion for summary judgment. (Doc. No. 19 (Motion); Doc. No. 19-1 (Memorandum).) Davis opposes the motion (Doc. No. 22 (Response)), and Erie has filed a reply. (Doc. No. 23 (Reply).)

For the reasons set forth herein, Erie's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

### A. The Accident and Liability Claim

On the evening of July 4, 2024, Davis was riding with her boyfriend Eddie Santos ("Santos") on his Harley Davidson when Santos merged onto the highway. (Doc. No. 18-1 (Davis

Deposition), at 24[1] –26.) The roadway had "uneven pavement" and "a lot of gravel" causing Santos to "los[e] control" of the motorcycle and "throw[ing]" Davis, who can only recall "flying in the air" before "hitting pavement[.]" (*Id.* at 25, 29.) Davis sustained multiple injuries, including: an unstable fracture of both wrists, an unstable fracture of the left ankle and right knee, a slight back fracture, a concussion, and road burns. (*Id.* at 31–32.) Davis has since received extensive medical treatment, including surgery and physical therapy. (*Id.* at 33–51.)

Davis initially "present[ed] a liability claim against Eddie Santos who was insured by Progressive Insurance Company[.]" (Doc. No. 1-1 ¶ 5.) There is no dispute that Santos's insurer "tendered its liability policy limits of One hundred Thousand [] dollars." (*Id.*) Davis then presented underinsured motorist ("UIM") and medical-payment ("med-pay") coverage claims to Erie under her automobile policy to recover the balance of her damages. (*Id.* ¶¶ 6–9, 14.) Erie denied Davis's claims as "excluded and/or limited under the terms of [her policy]." (Doc. No. 1-5 ¶ 11.)

**B. The Policy**

Erie issued Policy No. Q067507810 ("the Policy") to Davis on June 25, 2024, effective for the Policy Period running until June 25, 2025. (Doc. No. 19-3 (Excerpts of the Policy), at 2.) The Policy defines the scope of coverage and lays out various limitations and exclusions. (*Id.* at 6–41.) As relevant to the present motion, the Policy includes a "GENERAL POLICY DEFINITIONS" ("GPD") section (*id.* at 6–7), an "UNINSURED/UNERINSURED MOTORISTS BODILY INJURY COVERAGE ENDORSEMENT – OHIO" ("UIM Endorsement") (*id.* at 28–30), and an "AUTO MEDICAL PAYMENTS AND DEATH BENEFIT COVERAGE ENDORSEMENT – OHIO" ("med-pay Endorsement") (*id.* at 17–18).

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

*1. General Policy Definitions*

The GPD section defines the relevant terms for this action. An "**Auto**" is "any land '**motor vehicle**' with at least four wheels except a: . . . 4. '**miscellaneous vehicle**.'" (*Id.* at 6 (emphasis in original).) A "**Miscellaneous vehicle**" is "a motorcycle (including a motorcycle with a sidecar), moped, snowmobile, golf cart, all terrain vehicle and any similar recreational vehicle." (*Id.* at 7 (emphasis in original).) An "**Auto we insure**" means an "1. '**owned auto we insure**;'[2] 2. '**temporary substitute**;'[3] or 3. '**nonowned auto**.'"[4] (*Id.* at 6 (emphasis in original).)

*2. UIM Endorsement*

The UIM Endorsement broadly defines a "**Motor vehicle**" as "a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle, and bus." (*Id.* at 28 (emphasis in original).) The Endorsement also includes "**LIMITS OF PROTECTION**" with a subsection for "**Limitations of Payment**." (*Id.* at 30 (emphasis in original).) Two limitations are relevant to the present motion. The third Limitations paragraph provides: "'**We**' will pay no more than the Uninsured/Underinsured Motorists Coverage limits shown on the '**Declarations**' for the '**auto**' involved in the accident, regardless of the number of persons '**we**' protect, '**autos we insure**,' premiums paid or shown on the '**Declarations**,' claims made or '**autos**' involved in the accident." (*Id.* (emphasis in original).) The fifth Limitations

[2] An "**Owned auto we insure**" is defined as an "1. '**auto**' or '**trailer**' described on the '**Declarations**' for the coverages '**you**' have purchased; 2. '**additional auto**,' or '**additional trailer**;' 3. '**replacement auto**,' or '**replacement trailer**[.]'" (Doc. No. 19-3, at 7 (emphasis in original).) All three categories require the policyholder to "acquire, purchase, or lease" the vehicle. (*Id.* at 6–7 (emphasis in original).)

[3] A "**Temporary substitute**" is defined as "any '**auto**' or '**trailer**' which is a substitute for an '**owned auto we insure**.' The '**owned auto we insure**' must be withdrawn from normal use because of its breakdown, destruction, loss, repair or servicing. The '**temporary substitute**' cannot be owned by '**you**' and must be used with the permission of the owner." (Doc. No. 19-3, at 7 (emphasis in original).)

[4] A "**Nonowned auto**" is defined as a "1. while '**you**' are using it, any '**auto**,' '**moving van**,' '**trailer**' or '**temporary substitute**' not owned or leased by '**you**'[.]" (Doc. No. 19-3, at 8 (emphasis in original).)

paragraph provides: "Uninsured/Underinsured Motorists Bodily Injury Coverage does not apply to a '**miscellaneous vehicle**' unless the '**miscellaneous vehicle**' is listed on the '**Declarations**' and a premium is shown for this coverage." (*Id.* (emphasis in original).)

*3. Med-Pay Endorsement*

The med-pay Endorsement's "**OUR PROMISE**" section sets forth the general med-pay coverage grant: "'**We**' will pay reasonable medical expenses when '**anyone we protect**' suffers bodily injury in an accident. . . . Injury must be caused by an accident: 1. while '**anyone we protect**' is '**occupying**' or using an '**auto we insure**[.]'" (*Id.* at 17 (emphasis in original).) An accompanying "**EXCLUSIONS – What We Do Not Cover**" section lists eleven exclusions to coverage. (*Id.* (emphasis in original).) As relevant, Exclusion ten provides: "'**We**' do not cover injuries sustained by . . . anyone while '**occupying**' or using a motorcycle . . . A motorcycle is a two or three-wheel motor vehicle." (*Id.* at 18 (emphasis in original).)

**C. The Instant Action**

On May 27, 2025, Davis filed suit in state court asserting claims for UIM and med-pay coverage under the Policy. (*See generally* Doc. No. 1-1.) The complaint alleges that Erie breached the insurance contract and seeks a declaration (1) that Erie "must provide [UIM] coverage to" Davis; (2) that "any alleged 'miscellaneous vehicle' exclusion" be "deemed unenforceable and unconscionable" under Ohio Rev. Code § 3937.18 ("Uninsured and underinsured motorist coverage."); (3) that Erie provided "insufficient notice of any amendments" to Davis, "thereby rendering such endorsements unenforceable"; (4) that Davis "is entitled to [UIM coverage] in the amount of [$300,000.00], less the applicable limits of [$100,000.00] of [Santos] to the extent that [Davis's] damages exceed [$100,000.00]"; and (5) that Davis is "entitled to [med-pay] coverage in the amount of [$5,000.00]." (*Id.* at 4.) Erie removed the case to federal court pursuant to 28

U.S.C. § 1332 on the basis of diversity jurisdiction. (Doc. No. 1 ¶¶ 9–11.) After discovery, Erie moved for summary judgment, arguing that the Policy "expressly precludes UIM and med-pay coverage for injuries arising from the use of a motorcycle." (Doc. No. 19, at 1.)

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

A "party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. *Polderman v. Nw. Airlines, Inc.*, 40 F. Supp. 2d 456, 459 (N.D. Ohio 1999). Thus, in most civil cases the court must decide "whether reasonable jurors could find

by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Anderson*, 477 U.S. at 252.

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (holding that summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; "[a] mere scintilla of evidence is insufficient[.]" *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quotation marks and citation omitted).

Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." (citation omitted)). When the non-moving party fails to discharge its burden of pointing to record evidence demonstrating genuine issues of material fact—"for example, by remaining silent"—it waives its opportunity to do so.

*Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992). To the extent the non-moving party declines to address claims alleged in the complaint in responding to a motion for summary judgment, the Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases).

**B. Ohio Law General Principles of Insurance Policy Construction**

The parties agree that Ohio law governs the Policy. (*See* Doc. No. 19-1, at 3; Doc. No. 22, at 4–9.) Under Ohio law, "[a]n insurance policy is a contract whose interpretation is a matter of law" for the courts to resolve, *see Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008) (quotation marks and citation omitted), and "must be construed in accordance with the same rules as other written contracts." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 597 N.E.2d 1096, 1102 (Ohio 1992) (citations omitted). "[A] contract must be construed in its entirety and in a manner that does not leave any phrase meaningless or surplusage." *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 363 (6th Cir. 2014) (quoting *Local Mktg. Corp. v. Prudential Ins. Co.*, 824 N.E.2d 122, 125 (Ohio Ct. App. 2004)). Courts examine insurance contracts "as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003) (citation omitted). The role of the court is therefore "to give effect to the intent of the parties to the agreement." *Id.* (citations omitted). "When the policy language is clear, the court may look no further to find the intent of the parties." *Buehrer v. Meyers*, 155 N.E.3d 222, 226 (Ohio Ct. App. 2020) (quotation marks and citation omitted).

"Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager*, 896 N.E.2d at 669 (citation omitted). An ambiguous provision "will be construed strictly against the insurer and liberally in favor of the insured," *id.* (quotation marks and citation omitted), particularly where the provision purports to limit or qualify coverage. *Westfield Ins. Co. v. Hunter*, 948 N.E.2d 931, 935 (Ohio 2011) (citation omitted).

Where an insurance contract contains exceptions to coverage, "there is a presumption that all coverage applies unless it is clearly excluded in the contract." *Grange Indem. Ins. Co. v. Hinds*, 228 N.E.3d 714, 719 (Ohio Ct. App. 2023) (quotation marks and citation omitted) (alteration in original); *Hunter*, 948 N.E.2d at 935 ("An exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded." (citation modified and citations omitted)). The insurer, not the insured, "bears the burden of proving the applicability of an exclusion in its policy." *St. Marys Foundry, Inc. v. Emps. Ins. of Wausau*, 332 F.3d 989, 993 (6th Cir. 2003) (citing *Cont'l Ins. Co. v. Louis Marx Co.*, 415 N.E.2d 315, 317 (Ohio 1980)).

## III. DISCUSSION

The salient facts are not in dispute, and we are presented solely with a question of law concerning the correct construction of the Policy. Specifically, there is no dispute that: (1) Davis was injured in a single-vehicle motorcycle accident on July 4, 2024 (Doc. No. 18-1, at 25–26; Doc. No. 19-1, at 1; 22, at 2); (2) at the time of the accident, Davis was a passenger on the motorcycle being driven by Santos (Doc. No. 18-1, at 27, 29); (3) the motorcycle belonged to Santos and it was insured under a policy of insurance issued to Santos (*id.* at 26 – 27, 70); (4) Davis recovered the $100,000.00 liability limit from Santos's insurance (Doc. No. 1-1 ¶ 5; Doc. No. 19-1, at 1); (5) at the time of the accident, Santos was Davis's boyfriend and did not live with her (Doc. No. 18-1, at 26); (6) Santos's motorcycle was neither a work vehicle nor listed on the Policy (*id.* at 26–

29); (7) the Policy declared only two vehicles, "a KIA Optima and an Audi Q7" (Doc. No. 19-3, at 2); (8) the Policy did not list Santos's or any other motorcycle in the declarations, and Davis never spoke to an insurance agent regarding adding a motorcycle to the Policy (*id.*; Doc. No. 18-1, at 70–71, 75); and (9) the Policy provides UIM and med-pay coverage with limits of $300,000.00 and $5,000.00, respectively (Doc. No. 19-3, at 3).

Because Erie denied coverage based on limitations and exclusions in the Policy, it bears the burden of demonstrating the applicability of those provisions. *Crow v. Dooley*, No. 1-11-59, 2012 WL 2090078, at *3 (Ohio Ct. App. June 11, 2012) (citing *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 719 N.E.2d 955, 959 (Ohio 1999)). To defeat coverage, Erie "must demonstrate that [the limitation or exclusion] is capable of the construction it seeks to give it, and that such construction is *the only one* that can be fairly placed upon the language." *Scott Fetzer Co. v. Zurich Am. Ins. Co.*, 769 F. App'x 322, 326 (6th Cir. 2019) (quoting *Bosserman Aviation Equip., Inc. v. U.S. Liab. Ins. Co.*, 915 N.E.2d 687, 692–93 (Ohio Ct. App. 2009) (emphasis in original), and citing *Lane v. Grange Mut. Cos.*, 543 N.E.2d 488, 490 (Ohio 1989)); *see also Schwartz Manes Ruby & Slovin, L.P.A. v. Monitor Liab. Managers, LLC*, 483 F. App'x 241, 244 (6th Cir. 2012) ("[A]n exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (quoting *City of Sharonville v. Am. Emp'rs Ins. Co.*, 846 N.E.2d 833, 836 (Ohio 2006) (emphasis in original))).

### A. Davis's Claim for UIM Coverage

Erie contends that it is "entitled to judgment as a matter of law because [the Policy] expressly precludes UIM . . . coverage for injuries arising from the use of a motorcycle." (Doc. No. 19, at 1.) In 2001, the Ohio legislature amended § 3937.18 to "permit[] policies with [UIM] coverage to limit or exclude coverage under circumstances that are specified in the policy even if

those circumstances are not also specified in the statute." *Snyder v. Am. Fam. Ins. Co.*, 871 N.E.2d 574, 579 (Ohio 2007); *id.* ("Eliminating the mandatory coverage offering and simultaneously permitting the parties to agree to coverage exclusions not listed in the statute provide insurers considerable flexibility in devising specific restrictions on any offered [UIM] coverage." (citation omitted)). The Court agrees with Erie that *Miller v. Erie Ins. Co.*, No. 5-07-36, 2008 WL 351482 (Ohio Ct. App. Feb. 11, 2008) is analogous to this action, and finds *Miller* highly persuasive. (Doc. No. 19-1, at 5–6; Doc. No. 23, at 3–4.) In *Miller*, decided shortly after *Snyder*, Miller was injured by a UIM while operating his own motorcycle within the scope of his employment. 2008 WL 351482, at *1. When Miller sought UIM coverage under his employer's Erie policy, the claim was denied because the UIM limitation excluded coverage for miscellaneous vehicles—specifically including motorcycles—that were not listed in the declarations. *Id.* The appeals court affirmed summary judgment for Erie because the UIM limitation was valid post-*Snyder* and "Miller's motorcycle was not listed on the" declarations for his employer's policy. *Id.* at *3. Similarly here, the Policy's GPD designates motorcycles as miscellaneous vehicles, and the UIM Endorsement limits coverage for accidents involving miscellaneous vehicles that are not listed in the Declarations. (Doc. No. 19-3, at 6–7, 30.) Because Santos's motorcycle qualifies as a miscellaneous vehicle and was not included in the Declarations, there is no UIM coverage under the Policy.

Davis, nevertheless, disputes that these provisions clearly and unambiguously preclude coverage for the July 4, 2024 accident. (Doc. No. 22, at 8–9.) She argues that the UIM Endorsement's definition of "Motor vehicle"—which specifically includes motorcycles—"creates a direct conflict" with the miscellaneous vehicle limitation that limits coverage for motorcycles not listed in the Declarations. (*Id.* at 8.) Davis claims because the Policy simultaneously excludes

coverage for "miscellaneous vehicles" while affording coverage for injury arising from an "underinsured motor vehicle" (a term that expressly includes motorcycles), "the policy does not clearly and unambiguously bar coverage for motorcycle-related injuries" when read as a whole. (*Id.*) This inconsistency, Davis contends, renders the Policy ambiguous and requires strict construction against Erie and in favor of coverage. (*Id.*)

The Court disagrees. The *Miller* court explained: "it is well-established in Ohio that where two clauses of a contract appear to be inconsistent, the specific clause prevails over the general." 2008 WL 351482, at *4 (citations omitted). As in *Miller*, this Court "cannot ignore the plain language of the limitations section[,]" therefore "[t]he specific clause prohibiting [UIM] coverage for miscellaneous vehicles (unless listed in the Declarations section of the policy) must prevail over the general definitions . . . ." *Id.* While Davis is correct that under Ohio law ambiguities in insurance contracts are construed against the insurer and in favor of coverage, that principle is inapposite here because there is no conflict where the GPD provides general coverage, but that broad grant is limited by a specific clause.[5] Under the Policy, a motorcycle is a miscellaneous vehicle, and UIM coverage for miscellaneous vehicles is limited unless the vehicle is "listed on the 'Declarations' and a premium is shown for this coverage." (Doc. No. 19-3, at 7, 28, 30 (emphasis removed).) There is therefore no conflict or ambiguity.

Because Erie has shown that the miscellaneous vehicle limitation clearly and unambiguously precludes UIM coverage on these facts, Erie is entitled to judgment as a matter of

[5] The Sixth Circuit has observed that "it is common for an insurance policy to grant coverage, then exclude it later in the policy[.]" *Depositors Ins. Co. v. Estate of Ryan*, 637 F. App'x 864, 870 (6th Cir. 2016).

law on Davis's UIM claim.[6] *Miller*, 2008 WL 351482, at *5; *see, e.g.*, *Callender v. Taylor Indus., Inc.*, No. 95-1975, 1997 WL 73562, at *1 (E.D. La. Feb. 20, 1997) ("There is no genuine issue of material fact as to the policy coverage; and the insurer is entitled to a judgment as a matter of law.").

### B. Davis's Claim for Med-Pay Coverage[7]

Erie likewise contends that it is "entitled to judgment as a matter of law because [the Policy] expressly precludes . . . med-pay coverage for injuries arising from the use of a motorcycle," for two reasons: "med-pay coverage is barred (1) by a motorcycle exclusion and (2) because the Santos motorcycle wasn't an 'auto we insure' entitled to med-pay coverage." (Doc. No. 19, at 1; Doc. No. 19-1, at 8.) The med-pay Endorsement grants broad coverage subject to enumerated exclusions. (Doc. No. 19-3, at 17.) Erie invokes the med-pay Endorsement's Exclusion ten, which specifically carves out coverage for accidents involving motorcycles. (Doc. No. 19-1, at 6–8; Doc. No. 19-3, at 17–18.) The Court agrees that this exclusion bars coverage, since Davis was "**occupying**" Santos's motorcycle at the time of the accident. (Doc. No. 19-3, at 18 (emphasis in original).) Furthermore, because Santos's motorcycle does not qualify as an "**Auto we insure**," Davis is not entitled to med-pay coverage for the accident. (*Id.* at 6 (emphasis in original).) The GPD defines "**Auto we insure**" using three categories of qualifying vehicles. (*Id.* (emphasis in original).) Santos's motorcycle fits none: Davis neither owned it nor added it to the Policy, so it is not an "**Owned auto we insure**" (Doc. No. 18-1, at 26, 70–75; Doc. No. 19-3, at 6–8 (emphasis in

---

[6] Because Davis's UIM coverage claim is clearly and unambiguously limited by the UIM Endorsement's miscellaneous vehicle limitation, the Court does not reach Erie's alternative theory for denying coverage. (Doc. No. 19-1, at 6.)

[7] Davis's opposition does not address her claim for med-pay coverage. (*See generally* Doc. No. 22; *see also* Doc. No. 23, at 4–5.) Erie must still meet its burden under Rule 56, but Davis in failing to address the issue has abandoned her arguments as they relate to the claim. *See Brown*, 545 F. App'x at 372.

original)); Santos's motorcycle is not an "**auto**" because it does not have "at least four wheels" and is a "**miscellaneous vehicle**[,]" so it is neither a "**temporary substitute**" nor a "**nonowned auto**." (Doc. No. 19-3, at 6–8 (emphasis in original).)

Because Erie has shown that there is no genuine issue of material fact as to the med-pay Endorsement's exclusions, and that the Policy clearly and unambiguously precludes coverage on these facts, Erie is entitled to judgment as a matter of law on Davis's med-pay claim. *See, e.g.*, *Manufactured Hous. Communities of Washington v. St. Paul Mercury Ins. Co.*, 660 F. Supp. 2d 1208, 1216 (W.D. Wash. 2009) ("The Court finds that there is no genuine issue as to any material fact and that Defendant is entitled to judgment as a matter of law on the issue of coverage under the insurance policies.").

## IV. CONCLUSION

For the foregoing reasons, Erie's motion for summary judgment (Doc. No. 19) is **GRANTED**, and this case is dismissed.

**IT IS SO ORDERED**.

Dated: August 24, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**